CASE 28—PETITION· ORDINARY—MARCH 18.

# Louisville, &c., R. Co. v. Schick.

### APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. SENDING JURY TO VIEW PLACE OF ACCIDENT.—A jury may, as provided by section 318 of the Civil Code, be sent by the court, even after a case has been submitted to them, to view the place where any material fact occurred.
2. RAILROADS—FAILURE TO HAVE EITHER GATE OR WATCHMAN AT CROSSING.—Where the view at a railroad crossing in a city was obstructed by a cut, fences, etc., the failure of the railroad company to have either a gate or a watchman at the crossing was negligence, and it would have been proper for the court to so instruct the jury.
3. FAILURE TO INDEX TRANSCRIPT.—The transcript is condemned for want of a proper index.

THOMAS W. BULLITT AND JAMES QUARLES FOR APPELLANT.

1. It was error to send the jury to view the premises after the case was finally submitted to them, the information received by the view being evidence. (Civil Code, secs. 318, 319, 321; City of Topeka v. Martineau, 5 L. R. A., 775; People v. Bush, 68 Cal., 623; Burton v. State, 30 Ark., 328; Railroad Co. v. Dunlap, 47 Mich., 456; State v. Bertin, 24 La. An., 46; Eastwood v. People, 3 Parke Cv. Cas., 25; Ortman v. Railway Co, 32 Kan., 419; Washburn v. Railroad Co., 59 Wis., 364; Thompson on Trials, sec. 893.)

It is the right of a party to have the court instruct the jury as to how they shall regard information obtained from a view, whether as evidence or not as evidence. (Close v. Samm, 27 Ia., 503; Heady v. Turnpike Co., 52 Ind., 117; Washburn v. R. R. Co., 59 Wis., 364; Wright v. Carpenter, 49 Cal., 609; Brakken v. Ry. Co., 29 Minn., 41; Topeka v. Martineau, 5 L. R. Ann., 775.)

And as the Code (subsec. 5, sec. 317) requires instructions to be given before the argument of counsel, the view should have been ordered before the argument.

The jury viewed the premises more than a year after the accident happened, and the parties should have had an opportunity to inform the jury that the premises were not in the same condition they were in at the time of the accident. (Morton v. Smith, 48 Wis., 270.)

2. The court erred in refusing to restrain counsel from commenting on matters not in evidence. (Ferguson v. State, 49 Ind., 33; Hoxie v. Insurance Co., 33 Conn., 471; Balt. & Ohio R. Co. v. Boyd, 10 Atl. Rep., 315; Tucker v. Henniker, 41 N. H., 317.)

3. It was error to permit counsel for plaintiff to ask the trainmen whether or not they were running "under orders," and to prove by them that they were running without orders. (Dolfinger v. Fishback, 12 Bush, 474.)

·O'NEAL, PHELPS and PRYOR FOR APPELLEES.

1. This was a case of willful neglect, and a verdict for twelve thousand dollars is not excessive. (McLeod v. Ginther, 80 Ky., 408; L. & N. R. Co. v. Shirell, &c., 13 Ky. Law Rep., 902.)

·2. Where a new trial is sought on account of the misconduct of counsel, the ground must be sustained by affidavits showing its truth. (Civil Code, sec. 340, subsec. 2; Idem, sec 343.)

·3. The question of allowing the view and the time at which it shall be allowed are submitted to the discretion of the trial judge. (Civil Code, sec. 318; Thompson on Trials, secs. 883 908.)

    Therefore, appellant, in order to obtain a reversal, must show not only an abuse of the discretion, but an *affirmative, direct* wrong, and injustice to him by reason thereof. (Galena R. Co. v. Haslem, 73 Ill., 494; Boardman v. Fire Ins. Co., 54 Wis., 366; Clayton v. Chicago R'y Co., 77 Ia., 239; Baltimore R. Co. v. Polly Woods Co., 14 Gralt. (Va), 470.)

·CHIEF JUSTICE BENNETT DELIVERED THE OPINION OF THE COURT.

Wm. Schick, husband of the appellee, resided in Jefferson county, a short distance from the city of Louisville. On the 29th of July, 1883, he visited Louisville in a jersey wagon, and after finishing the business that took him to the city, he started home, taking Mrs. Becker, wife of his neighbor, and Mr. Phister, another neighbor, in the wagon to ride home with him. As they approached the place where the appellant's trains cross Eighteenth street in the city limits, they received warning, by the customary signals, of the approach of a train of cars. They stopped and awaited the passage of said train. And immediately after the said train had passed, Wm. Schick attempted to cross the track with the jersey wagon and party in it, but before he could cross the

track another locomotive which was following close upon the first train and running backward at a rapid rate, struck the wagon and knocked it from thirty-five to fifty yards, killing Schick and Mrs. Becker and injuring Phister. The appellee, widow of William Schick, brings this suit for damages, and the trial resulted in a verdict and judgment for twelve thousand dollars in her favor.

The evidence before the jury authorized them to believe that said locomotive did not give any notice that it was approaching the crossing by blowing its whistle or by ringing its bell or otherwise, until it was almost on the jersey wagon, and it was then too late for Schick and party to escape being struck. The evidence also authorized the jury to believe that, owing to some obstructions, as a cut, high fence, &c., Schick and party could not see the approach of the locomotive. It also appears that no gate or watchman was kept at the crossing. From the facts and circumstances in evidence, the jury had a right to believe that the deceased came to his death by the willful neglect of the appellant.

It appears that after the case had been given to the jury, and they had gone to their room to consider their verdict, they returned into the court-room and asked permission to visit the place of the accident in order to view the place themselves. The request was granted, and they were conducted to the place, and did take a view of it. There is no objection made to the manner in which this was done, nor is there any complaint as to the misconduct of the jury. The only objection urged here is, that

the court, after the jury had gone to their room to consult of their verdict, had no right to grant the request.

Section 318 of the Civil Code provides: "Whenever, in the opinion of the court, it is proper for the jury to have a view of real estate, which is the subject of litigation, or the place in which any material fact occurred, it may order the jury to be conducted in a body, under charge of an officer, to the place, which shall be shown them by some person appointed by the court for that purpose. While the jury are thus absent no person, other than the person so appointed, shall speak to them on any subject connected with the trial." Section 119 of said Code relates to the disposition to be made of the jury after the case has been finally submitted to them. Section 321 provides: "After the jury have retired for deliberation, if there be disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of the parties, or after notice to the parties or their counsel."

Counsel contend that the two latter sections control section 318, so as to limit the right of the court to order a view not later than the conclusion of the evidence and argument, but when the jury have taken the case to their room to consider of their verdict, they have no right to receive any further evidence, unless when they disagree as to some part of the evidence that has been submitted to them, then they

may be conducted into court, and in the hearing of the parties or their counsel, or after an opportunity has been given them to hear, be informed by the court, or by the witnesses themselves, as to the point of disagreement; and as the view of the place is evidence not introduced before the jury, they can not be allowed, after they have retired to their room to consider of their verdict, to make the view, because they would be receiving evidence not theretofore before them.

We agree with counsel that the place appearing on the view is evidence intended to explain, modify, corroborate or contradict the recollection of witnesses as to it. And we think that under section 318 the court is unlimited as to the time of allowing the view, for as that section contains no limitation as to time, the court has the right to order the view at any time during the investigation of the case by the jury. (See Thompson on Trials, section 908.)

We also think the other sections *supra* do not limit section 318. But if they do, we think that section 321 expressly authorizes the course pursued by the court, for said section provides that if the jury disagree as to the evidence, they may be taken into the court-room and be satisfied as to it. Now the witnesses had testified about the place, its location and condition, which was an important fact to be ascertained in order to determine the question of negligence and its degree. The place and its condition were thus before the jury all the time in the nature of evidence upon the subject of the appellant's negligence. The jury, it seems, could not take an in-

telligent view of this place from the evidence of the witnesses concerning it, and disagreeing as to said evidence, they asked the court to let them view the place itself as an object lesson, correcting, explaining or contradicting the verbal testimony in that regard.

We think that the sections *supra* do not limit section 318; but if we are mistaken in this, we think the action of the court is in harmony with section 321.

Counsel for the appellant also object to instruction No. 5, relating to willful negligence. That instruction is more favorable to the appellant than the law justifies. The appellant had no gate erected at said crossing, nor any watchman there to warn persons that they might be in danger of being hurt by an approaching train. The view, by reason of the cut, fences, &c., was obstructed. It seems to us, therefore, especially in view of the fact of no gate and no watchman at the crossing in a city like Louisville, and on the street described, an instruction saying that such failure was negligence would have been proper.

We see no injury to the rights of the appellant in the refusal of the court to stop counsel for the appellee in the course of the argument indulged in by him.

There is no full index to the record of this case; there is no index to the evidence, nor to the instructions, and what index there is is to be found in about the middle of the record. There is no compliance with the law in regard to indexing. The record is not properly indexed, and must be and is condemned.

The judgment is affirmed.